UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EMMA DONALDSON,<br><br>Plaintiff,<br><br>v.<br><br>WYETH, and its division WYETH PHARMACEUTICALS, INC.,<br><br>Defendants. | NO. 1:06cv671<br><br>COMPLAINT FOR DAMAGES<br>Personal Injury Action (28 U.S.C. §1332)<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff, Emma Donaldson, by and through her attorneys, and for her cause of action, sues the Defendants and states and alleges as follows:

I.

## PARTIES

### PLAINTIFF

1. Plaintiff, Emma Donaldson, is a citizen of Alabama, residing at 1782 County Road 531, New Brockton, Alabama 36351.

### DEFENDANTS

2. Defendant Wyeth, and its division, Wyeth Pharmaceuticals, Inc., is a New Jersey corporation with its principal place of business in Pennsylvania. Wyeth is licensed to do business in all states of the United States of America. At all relevant times, this defendant was engaged in the design, manufacturer, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drug Prempro, for ultimate sale and/or use in the United States of America, including but not limited to the state of

Alabama, as well as in various foreign jurisdictions.

3. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of costs and interest, and diversity jurisdiction exists pursuant to 28 U.S.C. Section 1332.

## II.

## FACTUAL BACKGROUND

### Case Specific Facts

4. Plaintiff, Emma Donaldson, was prescribed Defendants' products, including, but not limited to, Prempro, and *inter alia*, developed moderately differentiated infiltrating ductal carcinoma and DCIS which was diagnosed in approximately August of 2004.

5. Plaintiff, Emma Donaldson, sustained personal injury including, but not limited to, serious disease and illness and its sequelae, hospitalizations and surgery, shortened life, lost economic benefits as well as expenses for care (which in all probability will continue), treatment and hospitalization, and mental pain and suffering because of her use of Defendants' hormone therapy products.

6. Plaintiff, Emma Donaldson, underwent, including, but not limited to, surgery and subsequent treatment for the subject cancer. These injuries, and all resultant personal injury and mental pain and suffering she occasioned, were a direct and proximate result of her use of Defendants' hormone therapy drugs.

### The Marketing of Hormone Therapy

7. In 1995, Wyeth introduced Prempro, combination hormone therapy that contains estrogen and medroxy progesterone acetate (synthetic progestin). Wyeth

promoted Prempro and its other combination medroxy progesterone acetate pill, Premphase in its similar fashion to its marketing of Premarin.

8.  The FDA originally approved Prempro only to relieve menopausal symptoms such as hot flashes and vaginal atrophy. Wyeth, however, has long touted additional benefits for Prempro. For example, until 1998, Wyeth touted that Prempro would prevent heart disease in high risk women until the results of the heart and estrogen/progestin replacement study were made public.

### The WHI and NCI Studies

9.  Defendants' promotion of hormone therapy for long-term use proved false and misleading when studies released in July, 2002 showed that such use substantially increases the risk of *causing* disease.

10.  Two large cohort studies concluded that the risks of hormone therapy outweighed the benefits for most women: The WHI study, reported at Roussow JE, et al., *Risks and Benefits of Estrogen Plus Progestin in Healthy Post-menopausal Women.* (JAMA. 2002 Jul 17; 288:321-33); and, the NCI study, reported at Lacey JV Jr., et al. *Menopausal Hormone Replacement Therapy and Risk of Ovarian Cancer.* (JAMA. 2002 Jul 17; 288(3):334-41.)

11.  At the DSMB's meeting on May 31, 2002, the data review revealed for the first time that the number of cases of invasive breast cancer in the estrogen plus progestin group had crossed the boundary established as a signal of increased risk. The DSMB's May 31, 2002 recommendation to stop the trial was based on the finding of increased breast cancer risk, supported by the evidence of overall health risks exceeding any benefits. On or about July 8, 2002, participants in the WHI study started receiving letters

informing them about the results and telling them that they should stop study medications.

12. The WHI Study found that for the estrogen plus progestin group (i.e., those women who took Prempro) compared to placebo, overall there was a:

    a. 41 percent increase in strokes;

    b. 29 percent increase in heart attacks;

    c. 100 percent increase in venous thromboembolism (blood clots);

    d. 22 percent increase in total cardiovascular disease;

    e. 26 percent increase in breast cancer;

    f. 37 percent reduction in cases of colorectal cancer; and

    g. one-third reduction in hip fracture rates.

13. Because of the importance of the report from the WHI investigators on the estrogen plus progestin study the study was released early to the public on July 9, 2002, as an expedited article on the *JAMA* website.

14. In October, 2003, the WHI study produced a report with findings similar to the NCI study regarding ovarian cancer. The October 1, 2003 issue of *JAMA* reported that combination hormone therapy was also associated with increased risk for ovarian cancer; the WHI investigators found that women randomized to received combined hormone therapy (I.E. estrogen plus progesterone) experienced a 58 percent increase in ovarian cancer rates.

### Wyeth Changes Labels and Reverses Long-Term Marketing Strategy

15. In light of the WHI and NCI studies and other subsequent research reports, the labels provided by Wyeth for its Premarin and Prempro drugs were inadequate,

misleading and inaccurate. In fact, Wyeth changed warning labels on Premarin and Prempro during the last week of August, 2002 to reflect the results of the July 2002 WHI and NCI studies.

16. Prior to the label change in August, 2002, the Prempro warning label made no mention whatsoever of ovarian cancer.

17. Nevertheless, Wyeth has long promoted the supposed benefits of long term hormone therapy for cardiovascular disease.

18. Wyeth had recklessly and willfully failed to conduct adequate pre-approval research and post-approval surveillance and to establish the safety of long-term hormone therapy. Nonetheless, Wyeth had promoted long-term hormone therapy use vigorously. The WHI and NCI studies could have and should have been conducted many years ago by Wyeth, before it began its long-term usage marketing campaign. Had it conducted the necessary studies and diligent post-marketing surveillance, Wyeth would have learned years ago that hormone therapy causes cardiovascular diseases, is marginally effective in preventing bone loss, does not promote well-being, causes a number of cancers and dementia, and is even harmful on a short-term basis by increasing the risk of breast cancer.

## II.

## FRAUDULENT CONCEALMENT

19. Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of the facts as alleged herein by the Defendants. Plaintiffs have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs could not reasonably have

discovered the dangerous nature of and unreasonable adverse side effects associated with, Prempro prior to July 9, 2002.

20. The Defendants were and are under a continuing duty to disclose to Plaintiff the true character, quality, and nature of their hormone therapy drugs, including Prempro. Because of their concealment of the true character, quality and nature of their hormone therapy drugs, the Defendants are estopped from relying on any statute of limitations defense.

## IV.

## CAUSES OF ACTION

### COUNT I - NEGLIGENCE AND/OR WANTONNES

21. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

22. At all relevant times, the Defendants had a duty to exercise reasonable care, and to comply with the existing standard of care, in its preparation design, research, development, manufacture, inspection, labeling, marketing, promotion, and sales of its hormone therapy drugs, including Prempro, which they respectively introduced into the stream of commerce, including a duty to insure their hormone therapy drugs did not cause users to suffer from unreasonable, dangerous or untoward adverse side effects.

23. At all times relevant, the Defendants owed a duty to properly warn consumers of the risks, dangers and adverse side effects of their hormone therapy drugs.

24. The Defendants breached their duty of care, and failed to exercise ordinary care and/or were wanton in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion and selling of their hormone

therapy drugs, including Prempro, which they introduced into the stream of commerce, because the Defendants knew or should have known that their hormone therapy drugs created the risk of unreasonable, dangerous or untoward adverse side effects.

25. The Defendants, or in the exercise of reasonable care, should have known that their hormone therapy drugs, including Prempro, were of such a nature that, if not properly prepared, designed, researched, developed, manufactured, inspected, labeled, marketed, promoted, and sold, they were likely to cause injury to those who took their drugs.

26. The Defendants breached their duty of care, and failed to use due care, or were wanton in the manner in which they prepared, designed, researched, developed, manufactured, inspected, labeled, marketed, promoted and sold their hormone therapy drugs, including Prempro, in that they:

    a. failed to prepare their hormone therapy drugs approximately to prevent the aforementioned risks to individuals when the drugs were ingested;

    b. failed to design their hormone therapy drugs approximately to prevent the aforementioned risks to individuals when the drugs were ingested;

    c. failed to conduct adequate pre-clinical testing and research to determine the safety of their hormone therapy drugs;

    d. failed to conduct adequate post-marketing surveillance to determine the safety of their hormone therapy drugs;

    e. failed to give proper warnings regarding all possible adverse side effects associated with the use of their hormone therapy drugs and the

        comparative severity and duration of such adverse effects;

f.    failed to develop their hormone therapy drugs appropriately to prevent the aforementioned risks to individuals when the drugs were ingested;

g.    failed to manufacture their hormone therapy drugs approximately to prevent the aforementioned risks to individuals when the drugs were ingested;

h.    failed to inspect their hormone therapy drugs appropriately to prevent the aforementioned risks to individuals when the drugs were ingested;

i.    failed to label their hormone therapy drugs appropriately to prevent the aforementioned risks to individuals when the drugs were ingested;

j.    failed to market their hormone therapy drugs appropriately to prevent the aforementioned risks to individuals when the drugs were ingested;

k.    failed to promote their hormone therapy drugs appropriately to prevent the aforementioned risks to individuals when the drugs were ingested;

l.    failed to sell their hormone drugs appropriately to prevent the aforementioned risks to individuals when the drugs were ingested;

m.    failed to provide adequate training and information to healthcare providers for the appropriate use of their hormone therapy drugs;

n.    failed to warn Plaintiff and her health care providers, prior to actively encouraging and promoting the sale of their hormone therapy drugs, either directly or indirectly, orally or in writing, about the following:

    (i)    the need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal strokes, heart attacks,

      venous thromboembolism, cardiovascular disease, breast cancer, ovarian cancer, and other adverse side effects;

  (ii)  the possibility of becoming disabled as a result of the use of the drugs;

  (iii)  the adverse side effects associated with the use of the drugs, including, but not limited to, heart attacks, venous thromboembolism, cardiovascular disease, breast cancer, ovarian cancer; and

 o. were otherwise careless, wanton and/or negligent.

27. Despite the fact the Defendants knew or should have known that their hormone therapy drugs caused unreasonable and dangerous side effects, which many users would be unable to remedy by any means, they continued to promote and market their drugs to consumers, including Plaintiff, when there existed safer and more effective methods of countering the negative health effects of menopause, and of preventing osteoporosis and other diseases claimed by the Defendants to be prevented by their hormone therapy.

28. The Defendants knew or should have known that consumers generally, and Plaintiff specifically, would foreseeably suffer injury as a result of the Defendants' failure to exercise ordinary care.

29. The Defendants were or should have been in possession of evidence demonstrating that their products caused serious side effects. Nevertheless, the Defendants continued to market their products by providing false and misleading information with regard to their safety and efficacy.

30. The Defendants' actions described above were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

31. As a direct producing and proximate result of the actions and conduct of the Defendants as set forth above, Plaintiff has sustained injuries and is entitled to the damages outlined below.

## COUNT II - STRICT PRODUCTS LIABILITY/AEMLD

32. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further allege:

33. The Defendants are the manufacturer and/or supplier of hormone therapy drugs, and placed these drugs into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of their products.

34. The hormone therapy drugs manufactured and/or supplied by the Defendants were defective and unreasonably dangerous in design or formulation in that, when they left the hands of the manufacturers and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

35. The hormone therapy drugs were expected to and did reach Plaintiff without substantial change in condition. Alternatively, the hormone therapy drugs manufactured and/or supplied by the Defendants were defective and unreasonably dangerous in design or formulation, in that they left the hands of the manufacturers and/or suppliers, they were unreasonably dangerous and more dangerous than an ordinary consumer would expect.

36. The hormone therapy drugs manufactured and/or supplied by the

Defendants were defective and unreasonably dangerous due to inadequate warning and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results.

37. The hormone therapy drugs manufactured and/or supplied by the Defendants were defective and unreasonably dangerous due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from their hormone therapy drugs, they failed to provide adequate warnings to the medical community and women, and continued to promote the product as safe and effective.

38. The hormone therapy drugs were manufactured, distributed, tested, sold, marketed, advertised, and represented defectively by the Defendants and such defects were substantial factors in bringing about the injuries to the Plaintiff.

39. As a direct producing and proximate result of the actions and conduct of these Defendants as set forth above, Plaintiff has sustained injuries and is entitled to the damages outlined below.

## COUNT III - FAILURE TO WARN

40. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

41. The Defendants are the manufacturers and/or suppliers of hormone therapy drugs, and placed these drugs into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of their products.

42. The hormone therapy drugs manufactured and/or supplied by the

Defendants were not accompanied by proper warnings to physicians, the medical community and women regarding all possible adverse side effects associated with the use of their hormone therapy drugs and the comparative severity and duration of such adverse effects.

43. The warnings and information given to the medical community and women did not accurately reflect the symptoms, scope or severity of the potential side effects.

44. The Defendants negligently and/or wantonly failed to perform adequate testing which would have shown that their hormone therapy drugs possessed serious potential side effects with respect to which full and proper warnings, accurately and fully reflecting symptoms, scope and severity should have been made.

45. The hormone therapy drugs manufactured and/or supplied by the Defendants were defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury and death from hormone therapy drugs, they negligently and/or wantonly failed to provide adequate warnings to physicians and consumers. And despite their inadequate post-marketing warnings and instructions to physicians, the medical community, and consumers, Defendants continued to promote their products aggressively.

46. Had adequate warnings or instructions been provided, Plaintiff would not have taken the drugs as she did, and would not have suffered harmful side effects.

47. As a direct producing and proximate result of the actions and conduct of these Defendants as set forth above, Plaintiff has sustained injuries and is entitled to the damages outlined below.

## COUNT IV - BREACH IF IMPLIED WARRANTY

48. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

49. In the design, manufacture, marketing, distribution, and sale of Prempro, the Defendants impliedly warranted to the public in general, and to Plaintiff, that the hormone therapy drugs designed, manufactured, marketed, distributed, and sold by them, or under their supervision, direction and control, was merchantable and reasonably fit and suitable for the ordinary purposes for which such goods are used, and that the products conformed to the standards imposed by law.

50. The Defendants breached their implied warranties of fitness and merchantability, insofar as Prempro, was placed into the stream of commerce in such a manner as to constitute an unreasonable danger and hazard to Plaintiff when used for their intended purpose. Contrary to such implied warranty, the Defendants' hormone therapy drugs were not of merchantable quality or safe or fit for their intended use, because the products were and are unreasonably dangerous and unfit for the ordinary purposes of which they were sold.

51. Plaintiff reasonably relied upon the skill and judgment of the Defendants as to whether their hormone therapy drugs were of merchantable quality and safe and fit for their intended use.

52. As a direct producing and proximate result of the actions and conduct of these Defendants as set forth above, Plaintiff has sustained injuries and is entitled to the damages outlined below.

## COUNT V - BREACH OF EXPRESS WARRANTY

53. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

54. In the design, manufacture, marketing, distribution, and sale of Prempro, Defendants expressly warranted to the public in general, and to this Plaintiff in particular, that the hormone therapy drugs designed, manufactured, marketed, distributed and sold by them, or under their supervision, direction and control, were merchantable and reasonably fit and suitable for the ordinary purposes for which such goods are used, and that the products conformed to the standards imposed by law, and were safe and efficacious when used as intended.

55. These warranties came in the form of (1) publicly-made written and verbal assurances of the safety and efficacy of hormone therapy drugs by the defendants; (2) press releases, interviews, and dissemination via the media of promotional information, the sole purpose of which was to create and increase demand for hormone therapy drugs, which utterly failed to warn of the risks inherent to the ingestion of hormone therapy; (3) verbal assurances made by the Defendants regarding hormone therapy, and the downplaying of any risk associated with the drugs; (4) false and misleading written information, supplied by the Defendants and published in the *Physician's Desk Reference* on an annual basis, upon which physicians were forced to rely in prescribing hormone therapy drugs during the period of Plaintiff's ingestion of hormone therapy drugs, including, but not limited to information relating the recommended duration of the use of the drugs; (5) promotional pamphlets and brochures published and distributed by the Defendants and directed to consumers; and (6) advertisements. The documents referred

to in this paragraph were created by and at the direction of the Defendants and, therefore, are in their possession and control.

56.    The Defendants breached their express warranties of fitness and merchantability insofar as Prempro was placed into the stream of commerce in such a manner as to constitute an unreasonable danger and hazard to Plaintiff when used for its intended purpose. Contrary to such express warranties, the Defendants' hormone therapy drugs were not of merchantable quality or safe or fit for their intended use, because the products were and are unreasonably dangerous and unfit for the ordinary purposes for which they were sold. As such, the Defendants' products were neither in conformity to the promises, descriptions or affirmations of fact made about these drugs nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

57.    The Defendants thereafter breached their express warranties to Plaintiff in violation of the applicable provisions of the state Uniform Commercial Code as amended by (1) manufacturing, marketing, packaging, labeling, and selling hormone therapy to Plaintiff in such a way that misstated the risks of injury, without warning or disclosure thereof by package and label of such risks to Plaintiff or the prescribing physician or pharmacist, or without so modifying or excluding such express warranties; (2) manufacturing, marketing, packaging, labeling, and selling hormone therapy to Plaintiff which failed to counteract the negative health effects of menopause in a safe and permanent manner and without injury; and (3) manufacturing, marketing, packaging, labeling, and selling hormone therapy to Plaintiff, thereby causing her serious physical injury and pain and suffering.

58. Plaintiff reasonably relied upon the skill and judgment of the Defendants to whether their hormone therapy drugs were of merchantable quality and safe and fit for their intended use.

59. As a direct producing and proximate result of the actions and conduct of these Defendants as set forth above, Plaintiff has sustained injuries and is entitled to the damages outlined below.

### COUNT VI - FRAUD, MISREPRESENTATION AND SUPRESSION

60. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

61. The Defendants having undertaken to prepare, design, research, develop, manufacture, inspect, label, market, promote, and sell their hormone therapy drugs, including, Prempro, owed a duty to provide accurate and complete information regarding these products.

62. The Defendants' advertising programs, by containing affirmative misrepresentations and omissions, falsely, deceptively, fraudulently, intentionally and or negligently sought to create the impression that the use of their hormone therapy drugs, including Prempro, was safe for human consumption, had no unacceptable side effects, and would not interfere with daily life.

63. The Defendants fraudulently, intentionally, or negligently encouraged women in general, including Plaintiff, to remain on hormone therapy for the longer period of time than the Defendants knew or should have known were safe and effective.

64. The Defendants purposefully concealed, failed to disclose, misstated, downplayed and understated the health hazards and risks associated with the use of

hormone therapy. The Defendants, through promotional literature, deceived potential users and prescribers of the drugs by relaying only allegedly positive information, while concealing, misstating, and downplaying known adverse and serious health effects. The Defendants falsely and deceptively kept relevant information from potential hormone therapy users and minimized prescriber concerns regarding the safety and efficacy of their drugs.

      65.    Plaintiff and her prescribing physicians justifiably relied, to their detriment, upon the Defendants' fraudulent, intentional, and/or negligent misrepresentations concerning their hormone therapy drugs. Moreover, Defendants knew, or should have known that these representations were false and made the representations with the intent or purpose that Plaintiff and/or the prescribing physicians would rely on them.

      66.    In particular, the materials disseminated by the Defendants they fraudulently, intentionally, or negligently misrepresented or omitted a number of material facts regarding their hormone replacement drugs, including Prempro, including but not limited to, the following:

      a.    The presence and adequacy of the testing of their hormone therapy drugs, both pre-and post-marketing; and

      b.    the severity and frequency of adverse health effects caused by their hormone therapy drugs.

      67.    Plaintiff is entitled to punitive damages because the failure of the Defendants to warn was reckless and without regard for the public's safety and welfare. The Defendants misled both the medical community and the public at large, including

Plaintiff, by making false representations about the safety of their hormone therapy drugs.

69. The misrepresentations and active fraudulent concealment by the Defendants constitutes a continuing tort against Plaintiff and others who ingested hormone therapy drugs.

70. The Defendants were or should have been in possession of evidence demonstrating that their products caused serious side effects. Nevertheless, the Defendants continued to market their products by providing false and misleading information with regard to their safety and efficacy.

71. The Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff and the public.

## CLAIMS FOR DAMAGES

72. Plaintiff alleges that she has suffered the following injuries and damages as a direct producing and proximate result of the actions and conduct of these Defendants:

    a. reasonable and necessary health care expenses, past and future;

    b. physical pain and suffering, past and future;

    c. mental anguish, past and future;

    d. lost wages and loss of future wage earning capacity;

    e. physical disability/impairment, past and future;

    f. all other consequential damages, fees and expenses.

73. Plaintiff is entitled to punitive damages because the Defendants' failure to warn was reckless and without regard for the public's safety and welfare. The Defendants mislead both the medical community and the public at large, including Plaintiff herein,

by making false representations about the safety of their products. The Defendants downplayed, understated, and disregarded its knowledge of the serious and permanent side effects associated with the use of hormone therapy despite available information demonstrating their products were likely to cause serious and sometimes fatal side effects to its users.

WHEREFORE, the above premises considered and for each count enumerated herein, Plaintiff prays for judgment against Defendants, jointly and severally, for compensatory damages and punitive damages, and in an amount determined just and reasonable by a jury.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable in this action.

RESPECTFULLY SUBMITTED, this the _26th_ day of July, 2006.

                EMMA DONALDSON, PLAINTIFF

                BY: DAVIS & FEDER, P. A., Her Attorneys

BY: _____
       RON M. FEDER, ESQUIRE
       BAR NO. FED001

DAVIS & FEDER, P. A.
Attorneys at Law
P. O. Drawer 6829
Gulfport, MS  39506
(228) 863-6000